**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ida Herrera, | No. CV-19-00803-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Western Express Incorporated, *et al.*, | |
| Defendants. | |

At issue is Defendant Hydro Extrusion North America's Motion for Summary Judgment (Doc. 121, Hydro MSJ), to which Plaintiff Ida Herrera filed a Response (Doc. 134, Pl.'s Resp. Hydro MSJ), and Hydro filed a Reply (Doc. 141, Hydro Reply). Also at issue is Defendants Western Express, Inc. and Dustin Figueroa's Motion for Summary Judgment (Doc. 128, Western MSJ). Plaintiff filed a Response (Doc. 138, Pl.'s Resp. Western MSJ), and Western filed a Reply (Doc. 142, Western Reply). Lastly, Hydro's Motion to File A Second Summary Judgment Motion on Plaintiff's Punitive Damages Claim (Doc. 124) is at issue. The Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons that follow, the Court will grant in part and deny in part Western's Motion and deny Hydro's Motion in its entirety.

## I.      BACKGROUND

This case involves a fatal traffic accident where Gilberto Herrera ("Decedent") crashed into a trailer parked in the eastbound lane of West Jefferson street. The parties dispute key facts, including multiple important factual disputes between co-defendants.

Hydro Extrusion North America ("Hydro") produces aluminum extrusions. Western Express, Inc. ("Western") is a shipping company that transports Hydro's products. (Plaintiff's Separate Statement of Facts Western MSJ ("PSSOF Western MSJ") ¶ 9, Ex. 3 at 1.) Hydro has two shipping facilities in Tiger Industrial Park. West Jefferson Street is a private access street to Tiger Industrial Park. The street runs East/West and does not extend beyond 51st Avenue to the West or beyond 49th Avenue to the East. While it does not have demarcated lanes, it is utilized as a two-lane road with one lane running in each direction. There are multiple businesses located directly North/South off of West Jefferson Street. Hydro Shipping 1 is located on the South side of West Jefferson closest to 51st Avenue. On February 14, 2017, Dustin Figueroa, a Western Employee, transported an empty flat-bed Western trailer to Hydro Shipping 1 at Hydro's request. (Hydro Statement of Facts ("HSOF") ¶¶ 1-6; Plaintiff's Separate Statement of Facts Hydro MSJ ("PSSOF Hydro MSJ") ¶ 15, Ex. 18.)

When Mr. Figueroa arrived at the Hydro facility, Hydro employee Maria Meade instructed him to drop the flat-bed trailer off in the dirt parking area located off of West Jefferson Street. (HSOF ¶¶ 14, 19; Western Statement of Facts ("WSOF") ¶ 9.) This was standard practice for the Hydro shipping department. (HSOF ¶ 17.) Mr. Figueroa testified that there was already a trailer located in the spot where Ms. Meade instructed him to park, so he kept driving eastbound along West Jefferson Street. (WSOF ¶ 11.) While he was stopped on West Jefferson Street, an unidentified Hydro employee told him that it was okay to leave the trailer where it was, and that Hydro would move it later that day. (WSOF ¶ 12; PSSOF Hydro MSJ ¶ 30.) Mr. Figueroa left the trailer and returned to the Hydro facility to wait to pick up a loaded trailer. (WSOF ¶ 14.) Hydro contends that it is unaware of any employee who would have instructed Mr. Figueroa to park in that location. (HSOF ¶ 32.) Mr. Figueroa did not inform the Hydro shipping department that he had parked the trailer on West Jefferson Street but Hydro's commercial vehicle driver, Joel Gomez, knew the trailer's location. (HSOF ¶ 32; PSSOF Hydro MSJ ¶ 35.) After remaining at the shipping department for approximately 3 hours, Mr. Figueroa departed around 5:00pm that

1   day with a different loaded trailer. (WSOF ¶ 14.) The trailer remained parked on West

2   Jefferson Street overnight.

3       Decedent worked at Hydro Shipping 1. At approximately 5:40am the following day,

4   February 15, 2017, Decedent was commuting to work, traveling westbound on West

5   Jefferson Street between 50th and 51st Avenue. He switched into the eastbound lane in an

6   attempt to pass a vehicle in front of him driven by Juan Bautista and crashed into the parked

7   trailer. Mr. Herrera suffered fatal injuries. (HSOF ¶¶ 38-41, 45.)

8       Hydro and Western dispute who had control over the trailer at the time of the

9   accident. Western contends that Hydro had control because the trailer was parked at their

10  facility and Hydro had logged it into its system. (WSOF ¶¶ 22-23.) Hydro maintains that

11  protocol states that it does not have legal control until it unhooks the trailer, which it did

12  not do prior to the accident. (HSOF ¶ 46.)

13      Ida Herrera ("Plaintiff"), the Decedent's wife, arrived at the scene of the accident at

14  approximately 8:05am. She also worked for Hydro at the time of the accident. Plaintiff

15  noticed that the trailer was not in a typical parking area but contends she was unaware of

16  Hydro's involvement. (HSOF ¶ 50; Plaintiff's Controverting Statement of Facts Hydro

17  MSJ ("PCSOF Hydro MSJ") ¶ 50.) She subsequently hired an accident reconstructionist

18  as well as an attorney who corresponded with Hydro and Western via email and telephone.

19  (HSOF ¶¶ 51-52.) Plaintiff filed a lawsuit as personal representative of Gilberto Herrera's

20  estate, and "for herself and on behalf of all statutory beneficiaries" against Mr. Figueroa,

21  Western, and unidentified "Defendants ABC Limited Liability Corporations I-X" on

22  February 7, 2019. (Doc. 1, Complaint.) On April 15, 2019, Western provided Plaintiff with

23  its Statement of the Case that listed Hydro as an unnamed potentially liable third party.

24  (PCSOF Hydro MSJ ¶ 50; Doc, 17, Joint Case Management Plan at 9.) Plaintiff

25  subsequently filed a Stipulated Motion to Substitute Hydro in place of the "ABC Limited

26  Liability Corporations" on May 17, 2019 (Doc. 22.) and filed her Second Amended

27  Complaint on May 30, 2019. (Doc. 26.)

28

1

2

## II.    LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

## III.   ANALYSIS

### A.   DUTY

#### 1.   Duty Under A.R.S. § 13-2906 and Phoenix City Code §§ 23-9 & 11

Among the elements required to establish a claim for negligence under Arizona law is a duty requiring the defendant to conform to a certain standard of care. *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). "[W]hether a duty exists is a matter of law for the court to decide." *Id.* "The existence of a statute criminalizing conduct is one aspect of Arizona law supporting the recognition of [a] duty." *Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 253, 866 P.2d 1330, 1339 (1994). Plaintiff contends that Western and Hydro owed Mr. Herrera a duty under A.R.S. § 13-2906, which criminalizes the obstruction of a highway or public thoroughfare. Section 13-2906 provides in relevant part:

> A.   A person commits obstructing a highway or other public thoroughfare if the person, alone or with other persons, does any of the following:
>
> 1.   Having no legal privilege to do so, recklessly interferes with the passage of any highway or public thoroughfare by creating an unreasonable inconvenience or hazard.
>
> 2.   Intentionally activates a pedestrian signal on a highway or public thoroughfare if the person's reason for activating the signal is not to cross the highway or public thoroughfare but to do both of the following:
>
> > (a)   Stop the passage of traffic on the highway or public thoroughfare.
> >
> > (b)   Solicit a driver for a donation or business.
>
> 3.   After receiving a verbal warning to desist, intentionally interferes with passage on a highway or other public thoroughfare or entrance into a public forum that results in preventing other persons from gaining access to a governmental meeting, a governmental hearing or a political campaign event.

A.R.S. § 13-2906.

Both Defendants moved for summary judgment, arguing that Section 13-2906 is inapplicable because "in Arizona 'public highways' are limited to those established in the

manner provided by law and to no others." *State ex rel. Herman v. Cardon*, 544 P.2d 657, 659 (1976).[1] Defendants correctly assert that West Jefferson Street was not established as a public highway in a manner provided by law, such as a state, county, or city statute. However, the Court does not find this fact dispositive as to whether Section 13-2906 applies to West Jefferson Street. *Cardon* and Defendants' other cited cases neither analyze Section 13-2906 nor, with the exception of *Territory v. Richardson*, 76 P. 456, 457-58 (1904), do they analyze the definition of 'highway' in a criminal statute. Rather, the central issue in each case is whether a civil statute provided the state or municipality the right to make improvements or otherwise control certain portions of land in Arizona. *See Burlington Northern and Santa Fe Ry. Co. v. Arizona Corp. Com'n.*, 12 P.3d 1208, 1212 (interpreting A.R.S. § 40-337 to determine whether municipality could establish a road as a public crossing where the road intersected with railroad tracks); *Cardon*, 544 P.2d at 658 (determining whether state had authority to construct a curb outside the boundary of a highway); *State ex. Rel. Herman v. Electrical Dist. No. 2 of Pinal Cty.*, 474 P.2d 833, 835 (1970) (determining whether state had authority to make improvements and widen a road).[2]

---

[1] Hydro additionally argues that Plaintiff failed to adequately plead that Hydro owed Decedent a duty under Section 13-2906. (Hydro Reply at 7.) Hydro characterizes Plaintiff's argument in her Response as an inappropriate "new legal theory" that is barred by *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000). The Court disagrees. In *Coleman*, plaintiffs alleged disparate treatment as the legal theory behind their cause of action under the Age Discrimination in Employment Act (ADEA). At summary judgment, plaintiffs added a claim for disparate impact. The district court dismissed the disparate impact claim and the Ninth Circuit affirmed, reasoning that allowing the disparate impact claim after the close of discovery would prejudice defendant because the disparate impact claim implicated new evidence and new defenses. *Id.* at 1292-93 (allowing plaintiff's disparate impact claim to proceed would prejudice defendant who "spent years developing… evidence" because the disparate impact and disparate treatment claims require "entirely different defenses"). Here, Hydro does not allege any such prejudice, nor does such prejudice exist. Plaintiff's Second Amended Complaint alleges that Defendants owed a duty under Phoenix City Code §§ 23-9 & 11, which criminalize similar actions as Section 13-2906. (Doc. 26 ¶¶ 29-30, 49.) Hydro's Motion for Summary Judgment, which argues that it did not owe a duty under Sections 23-9 & 11, cites the same evidence and caselaw that its Reply cites when arguing no duty existed under Section 13-2906, namely that West Jefferson Street did not meet *Cardon's* definition of a public highway. (Hydro MSJ at 8-9; Hydro Reply at 9-10.) Because Hydro was not prejudiced and had the opportunity to address Plaintiff's argument in its Reply, the Court will consider Plaintiff's theory of Defendants' duty pursuant to Section 13-2906.

[2] *Richardson* is inapposite for a different reason. In that case, the Court based its decision on a statute that is no longer in effect, which stated that only highways designated as public "by order of the board of supervisors" would be considered public highways. 76 P. at 457.

It was thus logical for the courts to ask whether the highways were established by the state or municipality looking to assert control. Here, however, the Court is not concerned with potential government overreach and is unaware of Arizona case law that extends *Cardon's* definition of public highway to criminal statutes.

Furthermore, Defendants' cases do not provide guidance on whether West Jefferson Street is a public thoroughfare under Section 13-2906. Hydro does not address the issue at all. Western briefly argues that West Jefferson Street should not be considered a public thoroughfare based on the whole text canon. It contends that if West Jefferson Street was a public thoroughfare, Section 13-2906(3) would outlaw walking to governmental meetings, hearings, or campaign events because a person walking might interfere with a person driving to the event. (Western MSJ at 8.) This argument ignores two portions of Section 13-2906(3). Any person walking to the event only can be charged under Section 13-2906(3) if: 1) he intentionally interferes with a person's access to the event; and 2) he actually prevents someone from reaching the event. Also, in Western's hypothetical, the people violating Section 13-2906(3) did so by walking on a sidewalk. (Western MSJ at 8.) However, people walking on a sidewalk would not interfere with a driver presumably driving in the street. The Court is thus unpersuaded that the whole text canon dictates summary judgment as a matter of law.

Finding Defendant's cited cases unpersuasive, the Court instead looked to how Arizona courts have interpreted "highway" and "public thoroughfare" in Section 13-2906. In *Payne v. Lemons*, 2010 WL 569891 (Ariz. Ct. App. Feb. 18, 2010), the court analyzed whether defendants were negligent per se under Section 13-2906 for constructing a fence that allegedly blocked: 1) Jeff Lake Road, "a dirt road not maintained by the county;" and 2) an easement adjacent to Jeff Lake Road. The court did not discuss *Cardon* or look to whether the road at issue was established by statute. Rather, it defined "public" as "affecting or likely to affect a substantial group of persons." A.R.S. § 13-2901(2) (2001) and used Random House Webster's definition of "highway" and "thoroughfare." *Id.* at *3. (defining "highway" as "a main road, esp. one between towns or cities ...; any public road

or waterway; any main or ordinary route, track, or course" and defining "thoroughfare" as "a road, street, or the like, that leads at each end into another street; a major road or highway; a passage or way through.") *Id.*, *citing* Random House Webster's Unabridged Dictionary 903, 1974 (Deluxe ed. 2004).[3]

The Court in *Orrell v. Maricopa County*, 2013 WL 4244477 (D. Ariz. Feb. 4, 2013) used a different source but propounded a similar definition as *Payne*. In that case, the Court analyzed whether Section 13-2906 applied to protestors blocking the entrance to the Maricopa County Police Station. It defined "highway" and "public thoroughfare" as "the entire width between the boundary lines of every way if a part of the way is open to the use of the public for purposes of vehicular travel." A.R.S. § 28-101, *amended by* 2021 Ariz. Legis. Serv. Ch. 117 (H.B. 2813). In that case, the Court held that protestors blocking the entrance to the Maricopa County Fourth Avenue Jail violated Section 13-2906 because the property on which the driveway was located was designated as "public right-of-way." *Id.* at *2.[4]

Under either *Orrell* or *Payne*, West Jefferson Street is a "public thoroughfare" or "highway" under Section 13-2906. The parties do not dispute that the public utilizes West Jefferson Street. Any vehicle can access West Jefferson Street from either 49th Avenue or 51st Avenue in order to travel eastbound or westbound and the Court is unaware of any restrictions on the public. (PSSOF Hydro ¶ 43.) Furthermore, there is a publicly imposed speed limit on the road (HSOF ¶ 7, Ex. 4.)

Therefore, the Court will deny both Defendants' Motions for Summary Judgment on the issue of duty under Section 13-2906.[5]

---

[3] There was conflicting evidence whether the fence at issue even reached Jeff Lake Road; therefore, the court denied summary judgment without reaching the issue on whether Section 13-2906 applied to the road itself. The court ultimately held that the easement adjacent to Jeff Lake Road was not a highway or public thoroughfare. *Id.*

[4] The City of Phoenix owned the property at issue. However, the Court did not cite this fact as a basis for its determination.

[5] The Court will further deny Defendants' Motions for Summary Judgment on the issue of duty under Phoenix Code §§ 23-9 & 11. Phoenix City Code § 23-9 provides "[i]t shall be unlawful for any person to obstruct any public street or alley, sidewalk or park or other public grounds within the City by committing any act of, or doing anything which is

## 2.     Hydro's Duty to Decedent as a Business Invitee

A business invitee is "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Nicoletti v. Westcor, Inc.*, 639 P.2d 330, 333 (1982), quoting Restatement (Second) of Torts § 332 (1965); *Callender v. MCO Properties*, 885 P.2d 123, 130 (Ariz. Ct. App. 1994). Employees are considered business invitees of their place of employment. *See Nicoletti*, 639 P.2d at 333. A landowner may owe a duty to a business invitee even where the business invitee is injured away from the landowner's property. *Stephens v. Bashas' Inc.*, 924 P.2d 117, 120-121 (Ariz. Ct. App. 1996).

Hydro argues that Decedent was not a business invitee because he was commuting to work and thus not in the course of his employment at the time of the accident.[6] Hydro is correct on its facts. However, as a matter of law, the Court disagrees with Hydro's proffered conclusion. Whether Mr. Herrera was in the course of employment at the time of the accident is not dispositive. Arizona law is clear that landowners have a duty to provide business invitees with "a reasonably safe means of ingress and egress for those who enter onto the land." *Nicoletti*, 639 P.2d at 333. Importantly, one can be a business invitee even where they are not in the course of the activity connected with the land possessor's business dealings. *See id.* (plaintiff employee was business invitee of employer after leaving work)*;*

---

injurious to the health…" Similarly, Phoenix City Code § 23-11 states, "[a]nything which… unlawfully obstructs any public street, alley, sidewalk or highway is hereby declared a nuisance…"

Defendants argued that these sections were similarly inapplicable to West Jefferson Street under *Cardon's* definition of public highway. (Hydro MSJ at 8-9; Western MSJ at 5-6.) For the same reasons that Section 13-2906 applies to West Jefferson Street, the Court disagrees. Sections 23-9 & 11 of the Phoenix Code are criminal statutes similar to Section 13-2906. Therefore, *Orrell* and *Payne's* definitions of "public" and "highway" are more appropriate than the definitions outlined in *Cardon.*

[6] Hydro additionally argues that Plaintiff failed to adequately plead the theory that Hydro owed Decedent a duty as a business invitee. *Coleman*, 232 F.3d at 1292. The Court again disagrees. Plaintiff alleged facts central to her "business invitee" theory in the Second Amended Complaint, including that Decedent was commuting to work at the time of the accident and was on a private access road that led to the Hydro shipping facility. (Doc. 26 ¶ 54.) Regardless, Hydro had the opportunity to address Plaintiff's business invitee theory in its Reply and does not contend that Plaintiff's alleged failure to plead led to any prejudice.

*Mauvis v. Scottsdale Christian Acad.*, 2020 WL 6839177 at *3 (D. Ariz. Nov. 19, 2020) (defendant high school owed duty to provide safe ingress and egress to man hit by car as he crossed highway to access high school football stadium). *Nicoletti* is particularly on point. In that case, Plaintiff had left work for the night and was injured while taking an alternate route to her car in the employee parking lot. While the court held that defendant did not owe plaintiff a duty because plaintiff went beyond the scope of her invitation by not using the "lighted sidewalk," it expressly stated that plaintiff was a business invitee at the time of the accident. *Nicoletti*, 639 P.2d at 333-34.

Here, Hydro does not argue that Decedent exceeded the scope of his invitation. Nor could it based on the evidence presented. West Jefferson Street is a private access road for Tiger Industrial Park and the businesses therein. Mr. Herrera crashed into the trailer while using West Jefferson Street to commute to work at the Hydro shipping facility. He was less than one block away from the facility when the accident occurred. Under Hydro's proposed bright-line rule that the employee must be in the course and scope of his employment, an employee who is injured while arriving for the start of his shift or a store's patron who is hurt right after exiting a store would not be considered a business invitee owed a duty of safe ingress and egress. Notably, Hydro did not cite Arizona case law in support of such a rule.[7]

The Court thus will deny Hydro's Motion for Summary Judgment on the issue of whether it owed Decedent a duty as a business invitee. Accordingly, Hydro's Motion for Summary Judgment on Plaintiff's negligent hiring, training, supervision, and/or retention claims, which was dependent on the Court finding Hydro did not owe Plaintiff a duty, will be denied as well.

---

[7] There are cases holding that a plaintiff was not a business invitee after leaving the landowner's premises. These cases support the Court's denial of summary judgment because they employ a fact-based inquiry into how close plaintiff was to the place of business at the time of the accident and how much time had elapsed since plaintiff left. *See e.g. Ritchie v. Costello*, 356 P.3d 337, 340 (Ariz. Ct. App. 2015) (holding plaintiff paraglider ceased being a business invitee of the defendant airport after he had flown for thirty minutes and travelled 1500 feet in the air). The court in *Ritchie* further noted that defendant did not have the ability to control the airspace where the accident took place. *Id.* at 341.

### 3.    Western's Duty under Restatement (Second) of Torts § 384

Plaintiff contends that Western owed Decedent a duty under Restatement (Second) of Torts § 384, which states:

> One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge. Restatement (Second) of Torts § 384.

Comment "g" to the section states that a duty only exists "while [the agent] remains in charge and control of the erection or creation of the structure or condition," and that Section 384 will not apply "to determine his liability for harm caused after his charge and control of the work and his privilege to be upon the land for the purpose of accomplishing it is terminated in any manner." Restatement § 384 cmt. g.

Western argues that comment "g" renders Section 384 inapplicable because Western ceded control over the trailer once Mr. Figueroa dropped it off and Hydro logged it on its security form. Plaintiff counters that there is a factual dispute whether Hydro or Western had control over the trailer at the time of the accident. Plaintiff cites the testimony of multiple Hydro employees who explain Hydro's policy that it does not take control of the trailer until it hooks the trailer to one of its vehicles and that Western never ceded control because Mr. Figueroa parked the trailer off of Hydro's property, in a different location from where Ms. Meade instructed him to leave it. (Plaintiff's Controverting Statement of Facts Western's MSJ ("PCSOF Western MSJ") ¶ 21; HSOF ¶ 46, Ex. 10, at 40.4–20, 149:11–16, Ex. 2 at 51:3–14, Ex. 19 at 126:4–130:14.) The Court agrees that this evidence is sufficient to create an issue of fact as to who had control of the trailer.

Western does not dispute that Hydro's employees' testimony creates an issue of fact. Rather, it cites the testimony and report of Plaintiff's expert, Anita Kerezman, who opined that Hydro had control of the trailer at the time of the accident. (Doc. 135-16 at 7; WSOF ¶ 21, Ex. 4, at 13:15-24, 67:20-68:1; 106:9-13, 133:16.) Western argues that

Plaintiff cannot rely on co-defendant's evidence to preclude summary judgment where Plaintiff's expert took the opposite position. (Western MSJ at 7-8; Western Reply at 6.) Hydro relies on *D.F. by & through Amador v. Sikorsky Aircraft Corp.*, 2017 WL 4922814, at *10-12 (S.D. Cal. Oct. 30, 2017). However, *Sikorsky* held that a defendant could not oppose its co-defendant's motion for summary judgment after the plaintiffs declined to oppose. *Id.* at 12. The court reasoned that allowing the co-defendant to oppose the motion would be equivalent to "forc[ing] plaintiffs to prosecute a trial… in the face of plaintiffs' wishes not to do so." *Id.* That is not an issue here. Plaintiff opposes summary judgment in favor of Western and expressly argues that there is an issue of material fact based on Hydro's proffered evidence. The Court agrees. Plaintiff's expert opining on the issue does not dictate that the Court settle the factual dispute in place of the jury. Western may utilize Ms. Kerezman's testimony at trial. But her testimony does not negate Hydro's evidence. Therefore, Western has not met its burden to show that there is not a genuine dispute of a material fact so as to warrant summary judgment.

### 4.     Defendants' Duty Under 49 C.F.R. § 392.22

Both Hydro and Western contend that they do not owe Plaintiff a duty under the Federal Motor Carrier Safety Regulations, 49 C.F.R. § 392.22, which provides:

> Whenever a commercial motor vehicle is stopped upon the traveled portion or the shoulder of a highway for any cause other than necessary traffic stops, the driver shall, as soon as possible, but in any event within 10 minutes, place the warning devices required by § 393.95 of this subchapter. 49 C.F.R. § 392.22.

Western's Motion for Summary Judgment does not argue the issue of duty under 49 C.F.R. § 392.22. However, Western argues in its Reply that it did not owe a duty to Decedent under Section 392.22 because it did not have control over the trailer at the time of the accident (Western Reply at 7.) As discussed, *supra*, there is an issue of material fact over control that precludes summary judgment.

Hydro, on the other hand, contends that it did not owe a duty under Section 392.22 in its Motion for Summary Judgment but fails to provide any support for its contention and

proceeds to focus only on causation. (Hydro MSJ at 10.) Hydro then discusses duty further in its Reply. Hydro first argues that Plaintiff's Response failed to produce admissible evidence that the trailer weighed a sufficient amount to qualify as a commercial motor vehicle. 49 C.F.R. § 390.5 defines commercial motor vehicle as "any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle . . . [h]as a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater." (Hydro Reply at 10-11.) Hydro is correct that Plaintiff did not produce such evidence. However, Hydro neither produces evidence nor even contends in its Statement of Facts that the trailer does not weigh the necessary weight. Therefore, neither side has produced evidence on the matter. The Court understands that Plaintiff has the ultimate burden of proof at trial, but as discussed, *supra*, Defendant did not raise this argument in its Motion for Summary Judgment, meaning Plaintiff did not have a reason to provide evidence of the trailer's weight in its Response.[8] Therefore, Plaintiff's failure to include the evidence is not grounds for summary judgment on the issue.

Hydro additionally contends that Section 392.22 is inapplicable because Hydro was not acting as a motor carrier; rather, Western was the motor carrier and Hydro was the shipper of goods at the time of the accident. (Hydro Reply at 10-11.) However, Hydro does not offer any evidence to support this contention. The Court presumes that Hydro is relying on the Master Shipper Agreement, which designates Western as the "Carrier" and Hydro as the "Shipper." (PSSOF Western ¶ 9, Ex. 3.) This argument ignores multiple relevant pieces of evidence. Hydro often transported the trailers within Tiger Industrial Park after Western returned them. Furthermore, Hydro employee Joel Gomez often was responsible for moving the trailers and knew that the trailer was located on West Jefferson Street. (PSSOF Hydro ¶ 35.) Most importantly, Mr. Figueroa testified that a Hydro employee told

---

[8] Moreover, a jury could find the trailer met or exceeded the necessary weight based on other evidence, such as photographs, descriptions, or logical inference, especially absent controverting evidence from Hydro. Conversely Hydro could raise the issue in a Rule 50 motion at the conclusion of its case-in-chief.

him to park the trailer on West Jefferson Street and that Hydro would move the trailer as necessary. (WSOF ¶ 12, Ex. 2 at 127:16-129:17.) Taking this evidence together, a jury could find that Hydro took on the role of the motor carrier with regard to the trailer involved in the accident. Hydro, like Western, also contends that it did not have control of the trailer at the time of the accident, but there is a clear issue of fact as to this point. Therefore, the Court denies both Defendants' Motions for Summary Judgment on duty under Section 392.22.

### B.   Causation

#### 1.   Western's Motion for Summary Judgment on Causation for Mr. Figueroa's Failure to Move the Trailer

"The proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Robertson v. Sixpence Inns of Am.*, 789 P.2d 1040, 1047 (1990). Western argues that summary judgment is warranted on Plaintiff's negligence claim for Western's failure to move the trailer because Plaintiff has not proffered sufficient evidence to prove that the accident would not have happened if the trailer was parked in a different location. Specifically, Western notes that Plaintiff's experts did not opine on the issue. (Western MSJ at 8-9.) But expert testimony is unnecessary to establish causation in this instance. Expert testimony is required whenever proof of an element of a claim, such as causation, calls for information that is outside an ordinary person's common knowledge. *See Claar v. Burlington N. R.R.*, 29 F.3d 499, 504 (9th Cir. 1994) (holding that a plaintiff must proffer admissible expert testimony when special expertise is necessary for a fact-finder to draw a causal inference). Western has not identified any such information.

Here, it is undisputed that Decedent crashed into the trailer while it was parked on West Jefferson Street, which led to his death. Hydro and Plaintiff have produced evidence that Ms. Meade instructed Mr. Figueroa to park the trailer in a spot off of West Jefferson Street. (HSOF ¶¶ 17-19; PCSOF Western MSJ ¶ 10.) Instead, Mr. Figueroa parked the

trailer on West Jefferson Street. At the least, there is an issue of material fact whether the accident would have occurred if the trailer was not parked on the street.

**2.**     **Defendants' Motions for Summary Judgment on the issue of Causation for Liability under C.F.R. § 392.22**

Both Hydro and Western contend that Plaintiff has not produced evidence of causation for her negligence claims under the Federal Motor Carrier Safety Regulations, 49 C.F.R. § 392.22. Western argues that summary judgment is warranted because Plaintiff's expert, Mr. Krauss, does not opine that warning markers would have prevented the accident. (Western MSJ at 9-10.) But Mr. Krauss's expert report states that "the lack of… conspicuity enhancements on the visible portion of the trailer reduced the likelihood of Mr. Herrera detecting its presence" and that "the unmarked, unlit trailer likely fell outside the attentional set of a typical driver in Mr. Herrera's position." (WSOF, Ex. 8 at 6, 11.) He also repeatedly opined in his report as well as his deposition that multiple factors reduced the conspicuity of the trailer and that these factors coalesced to contribute to the collision. (WSOF, Ex. 8 at 6, 10-11.) Hydro acknowledges Mr. Krauss's opinions but argues that they are unsupported assumptions that do not explain how warning devices would have prevented the accident. (Hydro MSJ at 12.) Hydro relies primarily on *Flowers v. K-Mart Corp.*, 616 P.2d 955 (Ariz. 1980) where the court held that plaintiffs had not produced controverting evidence that defendant's failure to include a crosswalk in its parking lot was a proximate cause of a car striking the plaintiffs. Hydro contends that Plaintiff has likewise failed to produce such evidence, and that Mr. Krauss's opinions are assumptions without any explanation as to how the warning devices would have prevented the accident. (Hydro MSJ at 12.)

*Flowers* is inapposite from the instant case for multiple reasons. There, plaintiffs did not submit expert testimony and their strongest evidence of causation was one plaintiff's testimony that he believed the driver would have stopped his car if there had been a crosswalk. The court characterized this belief as "sheer speculation." *Id.* at 959. Here, Mr. Krauss is a qualified expert who opined that the lack of conspicuity

enhancements contributed to the accident. Moreover, he testified regarding his methodology and bases for these opinions. His colleague took light measurements at the scene of the accident with a calibrated light meter and took photographs, which allowed Mr. Krauss to better understand the lighting and determine that the portion of the trailer facing Mr. Herrera was unlit, nonreflective, and unmarked. (PSSOF Hydro MSJ ¶ 58, Ex. 7 at 27:18-29:10.) Importantly, it does not break the chain of causation that the accident still may have occurred if Defendants had properly used warning markers. *Brand v. J.H. Rose Trucking Co.*, 427 P.2d 519, 524 (1967). In *Brand*, a truck stopped in the middle of a road, which led to a multi car accident. The court held that there was an issue of material fact whether the lack of warning devices was a proximate cause of the accident because the lack of warning devices gave oncoming drivers the impression that the truck was moving. *Id.*

Western argues that *Brand* is distinguishable because multiple witnesses in that case, including plaintiff, testified that the truck appeared to be moving, which was concrete evidence that the lack of warning devices was a proximate cause of the accident. (Western Reply at 9-10.) Because of this case's circumstances, Mr. Bautista is the only driver from that night who can provide testimony. He testified that he noticed the parked trailer right as he turned onto West Jefferson Street. This evidence supports Western's contention that the trailer was visible without a warning device, but it does not negate Mr. Krauss's testimony and report, particularly because Mr. Krauss explained that Decedent and Mr. Bautista had different vantage points (WSOF, Ex. 8 at 7.) Mr. Krauss's report and deposition testimony provide sufficient evidence that the lack of warning devices was a proximate cause of the accident to withstand summary judgment.

Finally, Hydro contends that Mr. Krauss's opinions should be disregarded because he did not perform any sort of conspicuity testing at night using the warning devices. While this may be an issue for cross examination, it does not nullify the portions of Mr. Krauss's report where he explained how the lack of warning devices may have caused the accident. Hydro filed a Motion for Summary Judgment, not a *Daubert* Motion. Even if it does not

1    believe that Mr. Krauss used the most effective method to reach his conclusions, it did not

2    challenge the viability of those conclusions. Mr. Krauss's testimony is sufficient to create

3    an issue of material fact and thus preclude summary judgment on the issue.

4        **C.    Negligent Training/Hiring and Negligent Entrustment**

5        The Court will grant summary judgment in favor of Western for Plaintiff's negligent

6    training and negligent entrustment claims. "An employer is liable for the tortious conduct

7    of its employee if the employer was negligent or reckless in hiring, supervising, or

8    otherwise training the employee." *Joseph v. Dillard's, Inc.*, 2009 WL 5185393, at *18 (D.

9    Ariz. Dec. 24, 2009). "In Arizona, '[f]or an employer to be liable for negligent hiring,

10   retention, or supervision of an employee, a court must first find that the employee

11   committed a tort.'" *Id.*

12       Summary judgment is warranted because Western produced ample evidence that its

13   training protocols are above industry standard and Plaintiff failed to adduce controverting

14   evidence that Western's training is deficient or that this deficiency was the proximate cause

15   of Mr. Figueroa's alleged negligence and the proceeding accident. Indeed, Plaintiff's

16   Response contains a noticeable lack of detail with regard to Western's training protocols

17   and how they were deficient. Even if there was sufficient evidence of negligent training,

18   Plaintiff has not produced evidence that this training was the proximate cause of Mr.

19   Figueroa's negligent actions. *See Russell v. Flores*, 2017 WL 564969 at *7 (D. Ariz. Jan.

20   10, 2017) (finding factual connection between alleged training deficiencies and the cause

21   of the crash too attenuated to create genuine issue of material fact). Instead, Plaintiff makes

22   conclusory statements such as "Mr. Figueroa either received insufficient training, or

23   ignored his training, when parking a flatbed trailer in an active travel lane when it was not

24   an emergency" and "Any well-trained driver would know better." (Resp. Western MSJ at

25   13.) Such conclusory statements will not create an issue of material fact. *List*, 880 F.2d at

26   1045. The Court thus will grant Western's Motion for Summary Judgment on the issue of

27   negligent training and hiring.

28

1   Plaintiff failed to oppose Western's Motion for Summary Judgment on her negligent

2   entrustment claim. The Court therefore will grant Western's motion on that issue as well.

3       **D.    Statute of Limitations**

4       The Court will deny Hydro's Motion for Summary Judgment on the issue of the

5   statute of limitations. A complaint for personal injury or wrongful death must be filed

6   within two years after the cause of action "accrues." A.R.S. § 12-542. In a case where the

7   "complaint shows on its face that the cause of action is barred by the statute of limitations,

8   the burden is on the plaintiff to show the statute should be tolled." *Ulibarri v.*

9   *Gersentberger*, 871 P.2d 698, 702 (Ariz. Ct. App. 1993) (citing *Cooney v. Phoenix*

10  *Newspapers, Inc.*, 770 P.2d 1185, 1187 (Ariz. Ct. App. 1989)). The "discovery rule" can

11  be applied to toll the accrual of an action where the "injury or the act causing the injury, or

12  both, have been difficult for the plaintiff to detect." *Gust, Rosenfeld & Henderson v.*

13  *Prudential Ins. Co. of Am.*, 898 P.2d 964, 967 (Ariz. 1995) (quoting *April Enters. V. KTTV*,

14  195 Cal. Rptr. 421, 436 (Ct. App. 1983)). Under the discovery rule, "a cause of action

15  'accrues' when the plaintiff discovers or by the exercise of reasonable diligence should

16  have discovered that he or she has been injured by a particular defendant's conduct."

17  *Lawhon v. L.B.J. Institutional Supply, Inc.*, 765 P.2d 1003, 1007 (Ariz. Ct. App. 1988)

18  (emphasis in original). "The plaintiff must at least possess a minimum requisite of

19  knowledge sufficient to identify that a wrong occurred and caused injury." *Walk v. Ring*,

20  44 P.3d 990, 996 (2002). However, "it is not enough that a plaintiff comprehends a 'what;'

21  there must also be reason to connect the 'what' to a particular 'who' in such a way that a

22  reasonable person would be on notice to investigate whether the injury might result from

23  fault." *Id.*

24      Hydro asserts that Plaintiff's cause of action accrued as of March 6, 2017, weeks

25  after the accident. (MSJ at 14-15.) Plaintiff argues that she was first put on notice of

26  Hydro's potential involvement through Western's Statement of the Case on April 15, 2019

27  and thus the discovery rule applies to toll the statute of limitations. (Pl's. Resp Hydro MSJ

28  at 14.)

The issue of whether Plaintiffs acted with "reasonable diligence" in discovering that Hydro's conduct potentially contributed to the accident depends on the specific facts and circumstances of the case. Hydro nonetheless contends that this case should be decided as a matter of law because the undisputed facts show that Plaintiff should have been aware of Hydro's involvement before April 15, 2019. Defendant cites *Thompson v. Pima County*, 243 P.3d 1024 (Ariz. Ct. App. 2010), where the court held that the statute of limitations had run on plaintiff's claim against the county for her injuries suffered in a car accident. However, in *Thompson*, police officers informed plaintiff on the day of the accident that road conditions, which were defendant's responsibility, likely contributed to the accident. *Id.* at 1028. The court ultimately held that plaintiffs were "unquestionably… aware of the necessary facts underlying their cause of action" prior to the expiration of the statute of limitations. *Id.* at 1029.

The Court cannot say the same in this instance. The police report of the accident is the strongest evidence that Plaintiff, as a reasonable person, should have been on notice of Hydro's involvement. It expressly states that the officers spoke with several of Hydro's employees, who informed them that:

> [T]he semi-trailer had made a delivery to this facility on Tuesday February 14, 2017 in the early afternoon. The trailer was then parked on Jefferson Street sometime after lunch. I was told that this is a common practice in this area and it is not uncommon for several semi-trailers to be parked on the street.

(Doc. 122-2 at 17.)

Hydro argues this report provided Plaintiff with definite notice of Hydro's involvement in the placement of the truck.

The Court disagrees. The police report only states that the semi-trailer had previously made a delivery to Hydro and then parked on Jefferson street. Notably, it omits who parked the truck on Jefferson Street or who gave instructions where to park the truck. And Hydro itself acknowledges that the trailer was parked in an area within Evergreen's boundary lines, a different company located in Tiger Industrial Park. (HSOF ¶ 31.) While

the police report is some evidence that a reasonable plaintiff would have been put on notice as to Hydro's involvement, it is not uncontroverted evidence that Plaintiff was unquestionably on notice to investigate Hydro's involvement.

Hydro also cites its in-house counsel, Meredith Ray's, communications with Plaintiff's lawyer, Miguel Chapa, as evidence that Plaintiff was aware of Hydro's potential involvement. However, the first letter Mr. Chapa sent to Ms. Ray on March 6, 2017 solely relates to Decedent's insurance policy. (HSOF ¶ 53, Ex. 22.) And subsequent emails between the two do not reference Hydro's involvement in the placement of the trailer. (HSOF ¶ 54, Exs. 23-24.) Finally, the April 5, 2017 call between Ms. Ray and Mr. Chapa creates an issue of material fact that supports the denial of summary judgment. Hydro does not contend that Ms. Ray said anything during that call that would have put Plaintiff on notice of Hydro's involvement or that Mr. Chapa said anything to indicate Plaintiff's knowledge of Hydro's connection to the case. Hydro merely states that the call took place on April 5, 2017. (HSOF ¶ 56.) Plaintiff, on the other hand, expressly denies that "Ms. Ray put Plaintiff's counsel on notice of any potential liability by Hydro at any time, or that such matters were discussed." (PCSOF Hydro MSJ ¶ 56.)

Hydro's additional evidence is similarly unconvincing. It contends that Plaintiff's knowledge that the trailer was not in a normal parking area illustrates that she was on notice and had an obligation to further investigate. Again, Plaintiff only had notice of what caused the accident but not who was responsible. *See Walk*, 44 P.3d at 996 (in order for statute of limitations to begin to run, Plaintiff must be able to connect the cause of the accident to a particular "who" so that a reasonable person would be on notice to investigate). Moreover, Plaintiff quickly identified a potential wrongdoer in Western. Hydro additionally cites Plaintiff's hiring of an attorney and accident reconstructionist, but like Mr. Chapa's communications with Ms. Ray, fails to identify anything about this evidence that would have put Plaintiff on notice of Hydro's potential involvement. (Hydro MSJ at 15; HSOF ¶¶ 51–53.)

Lastly, Hydro contends that Plaintiff's knowledge of Hydro's use of trailers and her husband's work with trailers should have put her on notice. (Hydro MSJ at 14.) While this is certainly evidence that Hydro can present at trial, it is insufficient to prevail on summary judgment. The trailer was not parked on Hydro's property. Instead, it was parked in an area where multiple businesses previously parked trailers (Hydro MSJ at 14.) In fact, Hydro's own employee, Joel Gomez, testified that he was not sure whether the trailer was for Hydro because "there is a lot of businesses around and it could be for anyone." (PSSOF Hydro MSJ, Ex. 19 at 17:14-22.) Hydro is certainly permitted to argue that a reasonable Plaintiff would have investigated all of the businesses, but Plaintiff has provided a reasonable interpretation of the evidence that creates an issue of material fact that should be settled at trial. *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985) (applying California substantive law) ("summary judgment should not be granted where contradictory inferences may be drawn from such facts, even if undisputed.").

Moreover, there is evidence that a reasonable person could think Western was the only actor responsible for the placement of the trailer. While Plaintiff's counsel had written evidence from the day the injury occurred—the police report—that identified Hydro, other evidence—the trailer belonged to Western and was not parked on Hydro's property—indicated that Western was the sole defendant. This case is factually complex, and the question of reasonableness is a close one, which weighs in favor of allowing a jury to determine whether Plaintiff "knew or with the exercise of reasonable diligence could have known" the identity of the correct defendant. *See Lawhon*, 765 P.2d at 1004-05 (holding discovery rule applied where plaintiff's attorney did not acquire immediately available evidence implicating two potential defendants until after the statute of limitations had expired).

Because the evidence could allow a reasonable jury to determine that it was reasonable for Plaintiff to not have discovered Hydro's involvement in the placement of the trailer until Western Express provided her its statement of the case on April 15, 2019, the Court will deny Hydro's Motion for Summary Judgment.

### E.    Western Punitive Damages

Finally, the Court will deny Western's Motion for Summary Judgment regarding punitive damages. Summary judgment on the question of punitive damages is inappropriate if "a reasonable jury could find the requisite evil mind by clear and convincing evidence." *Thompson v. Better–Bilt Aluminum Prods. Co.,* 832 P.2d 203, 211 (Ariz. 1992). In determining whether a defendant exhibited an "evil mind," courts consider "the nature of the defendant's conduct, including the reprehensibility of the conduct and the severity of the harm likely to result, as well as the harm that has occurred [in addition to] [t]he duration of the misconduct, the degree of defendant's awareness of the harm or risk of harm, and any concealment of it." *Id.* at 556. The primary question where punitive damages are concerned is motive because gross negligence and reckless disregard are not enough. *Volz v. Coleman Co., Inc.,* 748 P.2d 1191, 1194 (Ariz. 1987). Because defendants rarely admit to an "evil mind," improper motive is often inferred from sufficiently oppressive, outrageous, or intolerable conduct as well as defendant's conscious and deliberate disregard of the interest and rights of others. *Id.*

Western contends that there is no evidence of Mr. Figueroa's evil mind and thus Plaintiff cannot show that punitive damages are legally warranted. The Court disagrees. Evidence of Mr. Figueroa's conscious and deliberate disregard for the safety of others could be sufficient to meet the standard for punitive damages. *Id.* Here, there is evidence that Mr. Figueroa disregarded Hydro's instructions on where to park the trailer and then left the trailer on West Jefferson Street. While Mr. Figueroa claims that a different Hydro employee told him that it was acceptable to leave the trailer on West Jefferson Street, he cannot identify the employee and Hydro is unaware of any such employee. (HSOF ¶ 32.) Mr. Figueroa further testified that he understood the danger of parking a trailer in an active travel lane. (PSSOF Western MSJ ¶ 15, Doc. 129-2 at 132:23-133:4.) If a jury credited evidence that Mr. Figueroa disregarded Hydro's instructions on where to park the trailer and instead chose on his own to park it in an active highway lane despite knowing the risks,

1  it could find that he consciously disregarded the safety of other motorists. Therefore,

2  Western's Motion for Summary Judgment on the issue of punitive damages is denied.

3  **F.    Hydro Motion for Second MSJ**

4  The Court will deny Hydro's Motion to File a Second Motion for Summary

5  Judgment on the issue of Punitive Damages. (Doc. 124) because any such motion would

6  be futile at this time. Based on the undisputed facts as well as the testimony of Hydro's

7  own employees, there is sufficient evidence to create an issue of material fact regarding the

8  appropriateness of punitive damages. At the conclusion of the parties' presentation of the

9  evidence at trial, Hydro may move to exclude punitive damages under Fed. R. Civ. P. 50.

10  But at this stage, the Court would not grant Hydro's motion for summary judgment on the

11  issue of punitive damages.

12  **IT IS THEREFORE ORDERED** denying Defendant Hydro Extrusion North

13  America's Motion for Summary Judgment (Doc. 121);

14  **IT IS FURTHER ORDERED** denying Defendant Hydro Extrusion North

15  America's Motion to File a Second Summary Judgment Motion on Plaintiff's Punitive

16  Damages Claim (Doc. 124);

17  **IT IS FURTHER ORDERED** granting in part Defendants Western Express, Inc.

18  and Dustin Figueroa's Motion for Summary Judgment Re: Negligent Training/Hiring and

19  Negligent Entrustment (Doc. 128);

20  **IT IS FURTHER ORDERED** denying in part Defendants Western Express, Inc.

21  and Dustin Figueroa's Motion for Summary Judgment Re: Negligence (Doc. 128);

22  **IT IS FURTHER ORDERED** that Plaintiffs' claims will proceed to trial, and the

23  Court will set a pre-trial status conference by separate Order.

24  Dated this 24th day of May, 2021.

25

26  Honorable John J. Tuchi
   United States District Judge

27

28